# JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 17-108 JGB (SPx)** | Date | August 24, 2017 |
|---|---|---|---|
| Title | ***Patricia Rappley v. Portfolio Recovery Associates, LLC, et al.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **Order (1) GRANTING Defendant Portfolio Recovery Associates, LLC's Motion to Compel Arbitration (Dkt. No. 27), ORDERING the Parties to Arbitration, and STAYING the Proceedings Pending Arbitration; and (2) VACATING the hearing on August 28, 2017 (IN CHAMBERS)**

Before the Court is Defendant Portfolio Recovery Associates, LLC's Motion to Compel Arbitration.  (Dkt. No. 27.)  The Court finds this matter suitable for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After consideration of the papers filed in support of and in opposition to the motion, the Court GRANTS the motion and VACATES the hearing on August 28, 2017.

## I.    BACKGROUND

Plaintiff Patricia Rappley ("Plaintiff") initiated this action against Defendants Portfolio Recovery Associates, LLC and Does 1-10 (collectively, "PRA") on January 20, 2017.  (Dkt. No. 1.)  She seeks relief on behalf of herself and three putative classes of similarly situated individuals for allegedly unlawful debt collection practices by PRA.  (See generally FAC, Dkt. No. 21.)

On July 2, 2008, Plaintiff applied for a CareCredit account with Synchrony Bank ("Synchrony").[1]  (Koehler Decl. ¶ 9.)  On that same date, Synchrony approved Plaintiff's

---

[1] Synchrony was originally GE Money Bank.  (Koehler Decl. ¶ 1.)  GE Money Bank was renamed GE Capital Retail Bank on October 1, 2011.  (Id.)  GE Capital Retail Bank was later renamed Synchrony Bank on June 2, 2014.  (Id.)  References to Synchrony throughout this order refer to Synchrony Bank and its predecessors.

application, opened her account, and mailed her a "welcome packet" containing her CreditCare credit card and a printed copy of the GE Money Bank Credit Card Agreement (the "Card Agreement") to her address in Chino, California.  (Id. ¶ 13.)

Plaintiff used her CreditCare credit card twice, incurring $3,700 in charges: first on July 22, 2008 and again on April 7, 2010.  (Id. ¶ 24.)  On September 16, 2012, the outstanding balance on Plaintiff's account was $3,640.41.  (Id. ¶ 26.)  Synchrony sold Plaintiff's account to PRA on October 23, 2012.  (Id. ¶ 28.)

PRA is a limited liability company in the business of purchasing delinquent financial obligations from banks and other financial institutions.  (Marin Decl. ¶ 2; "Motion," Dkt. No. 27 at 4.)  When PRA purchased Plaintiff's account from Synchrony it purchased all rights, title, and interest in Plaintiff's account.  (Mot. at 4.)  On January 21, 2016, PRA filed suit against Plaintiff in the Superior Court for San Bernardino County, Case No. CIVDS 1600980, to collect the unpaid balance owed on her account.  (Marin Decl. ¶ 4.)

On January 20, 2017, Plaintiff filed her complaint against PRA.  ("Complaint," Dkt. No. 1.)  The Complaint alleged violations of: the (1) Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq.; (2) Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788, et seq.; and (3) California Business and Professions Code § 17200.  (Compl. ¶ 1.)  Plaintiff then filed a First Amended Complaint ("FAC") on May 19, 2017.  ("FAC," Dkt. No. 21.)  In the FAC, Plaintiff alleged only two causes of action: (1) a violation of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788, et seq.; and (2) a violation of California Business and Professions Code § 17200.  (FAC at 1.)

PRA filed the instant Motion to Compel Arbitration on June 29, 2017.  ("Motion," Dkt. No. 27.)  Plaintiff opposed the Motion on July 31, 2017, ("Opposition," Dkt. No. 28), and PRA filed its reply memorandum on August 14, 2017.  ("Reply," Dkt. No. 32.)

## II.   LEGAL STANDARD

The Federal Arbitration Act (the "FAA") provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA establishes a general policy favoring arbitration agreements.  AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011); Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1119 (9th Cir. 2008) ("Section 2 of the FAA creates a policy favoring enforcement of agreements to arbitrate.")  Its principal purpose is to "ensure that private arbitration agreements are enforced according to their terms." Concepcion, 563 U.S. at 334 (citing Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ., 489 U.S. 468 (1989) (internal quotation marks omitted)).  "Arbitration is a matter of contract, and the [FAA] requires courts to honor parties' expectations."  Id. at 351.

Pursuant to the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States

---

district court . . . for an order directing that such an arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. Id. If such a showing is made, the district court shall also stay the proceedings pending resolution of the arbitration at the request of one of the parties bound to arbitrate. Id. § 3.

In determining whether to issue an order compelling arbitration, a district court's involvement is limited to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Cox, 533 F.3d at 1119 (quoting Chiron Corp. v. Ortho Diagnostyic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000)). A party seeking to compel arbitration under the FAA has the burden in this regard. Id.

## III.    DISCUSSION

PRA moves this Court for an order compelling Plaintiff to arbitrate the claims she asserts in the FAC on an individual basis on the grounds that a valid, enforceable agreement to arbitrate exists and encompasses her present claims. (See generally Mot.) PRA also seeks a stay of this action pending resolution of the arbitration proceedings. (Id.) Plaintiff opposes the Motion, contending that the arbitration agreement is invalid as a matter of California law. (Opp'n at 3-9.)

### A.  The Arbitration Provision

On July 2, 2008, after Plaintiff's application for a CreditCare account was approved, Synchrony mailed her a "welcome packet" that included a printed copy of the Card Agreement. (Koehler Decl. ¶¶ 13, 15, Ex. D.) The Card Agreement set forth the terms and conditions of Plaintiff's account and included an arbitration provision (the "Arbitration Provision"). (Koehler Decl. Ex. D ¶ 21.)

The Arbitration Provision expressly informs the accountholder of the parties' agreement to arbitrate all disputes arising from, or relating to, the CreditCare account. (Id.) Pursuant to its terms, any such disputes are to be resolved through individual, non-class arbitration. (Id.) In relevant part, the Arbitration Provision provides as follows:

> **21. ARBITRATION PROVISION.** Please read this arbitration provision carefully. **IT PROVIDES THAT ANY PAST, PRESENT OR FUTURE LEGAL DISPUTE OR CLAIM OF ANY KIND, INCLUDING STATUTORY AND COMMON LAW CLAIMS AND CLAIMS FOR EQUITABLE RELIEF, THAT RELATES IN ANY WAY TO YOUR ACCOUNT, CARD OR YOUR RELATIONSHIP WITH US**

**("CLAIM") WILL BE RESOLVED BY BINDING ARBITRATION IF EITHER YOU OR WE[2] ELECT TO ARBITRATE.**

**…**

**IMPORTANT LIMITATIONS AND RESTRICTIONS: IF A CLAIM GOES TO ARBITRATION, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO: (1) HAVE A COURT OR A JURY DECIDE THE CLAIM; (2) ENGAGE IN DISCOVERY (I.E., THE RIGHT TO OBTAIN INFORMATION FROM THE OTHER PARTY) TO THE SAME EXTENT THAT YOU OR WE COULD IN COURT; (3) PARTICIPATE IN A CLASS ACTION IN COURT OR IN ARBITRATION, EITHER AS A CLASS REPRESENTATIVE OR A CLASS MEMBER; (4) ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION; OR (5) JOIN OR CONSOLIDATE CLAIM(S) WITH CLAIMS OF ANY OTHER PERSON.  THE RIGHT TO APPEAL IS MORE LIMITED IN ARBITRATION THAN IN COURT.  OTHER RIGHTS THAT YOU OR WE WOULD HAVE IF YOU OR WE WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.  ONLY A COURT MAY DETERMINE THE VALIDITY AND EFFECT OF PARTS 3, 4 AND 5 OF THIS PARAGRAPH.  IF A COURT SHOULD HOLD SUCH PART(S) TO BE INVALID, THEN THE ENTIRE ARBITRATION PROVISION SHALL BE NULL AND VOID.  HOWEVER, THIS WILL NOT LIMIT THE RIGHT TO APPEAL SUCH HOLDING.  IF A COURT SHOULD HOLD ANY OTHER PART(S) OF THIS ARBITRATION PROVISION TO BE INVALID, THE REMAINING PARTS SHALL BE ENFORCEABLE.  IN NO EVENT SHALL THE INVALIDATION OF ANY PART OF THIS ARBITRATION PROVISION HAVE THE EFFECT OF AUTHORIZING AN ARBITRATOR TO MAKE AN AWARD TO, ON BEHALF OF, OR AGAINST, ANY PERSON WHO IS NOT A NAMED PARTY TO THE ARBITRATION.**

(Id.)

The Arbitration Provision also includes information regarding applicable law:

These terms involve interstate commerce and this arbitration provision is governed by the [FAA].  Utah law shall apply to the extent state law is relevant under Section 2 of the FAA in determining the validity of this provision.  The arbitrator has to follow: (1) the

---

[2] For purposes of the Arbitration Provision, "We," "Us," and "Our," are defined to mean "(1) GE Money Bank and all of its respective parents, subsidiaries, affiliates, predecessors, successors, assigns, employees, officers and directors . . ., and (2) CareCredit LLC and each Participating Professional that accepts the CareCredit Card and all of their respective parents, subsidiaries, affiliates, predecessors, successors, assigns, employees, officers and directors." (Id. Ex D ¶ 21.)

substantive law, consistent with the FAA, that would apply if the matter had been brought in court, (2) this arbitration provision, and (3) the administrator's rules.  The arbitrator is authorized to award remedies that would apply if the individual action were in a court . . . .   The arbitrator has no authority to conduct an arbitration on a class action basis or to make an award to, on behalf of, or against, any person who is not a named party to the arbitration.

(Id.)  The Arbitration Provision further provides that it "will survive the termination" of the accountholder's account and card, remaining in effect no matter the event.  (Id.)

In addition to the terms described above, the Arbitration Provision also provided Plaintiff with the right to reject arbitration:

> **Right to Reject Arbitration: You may reject this arbitration provision, in which event neither you nor We will have the right to require arbitration.**  Rejection will not affect any other aspect of these terms.  To reject the arbitration provision, you must send Us a notice within 60 days after you open your Account.

(Id.)

## B.  Whether a Valid Agreement to Arbitrate Exists

The Court's first inquiry is whether Plaintiff entered into a valid arbitration agreement with PRA.  Since "arbitration is a matter of contract," (United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)), to evaluate the validity of an arbitration agreement, federal courts "should apply ordinary state-law principles that govern the formation of contracts."  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).  Arbitration agreements may be invalidated by "generally applicable defenses such as fraud, duress, or unconscionability."  Concepcion, 563 U.S. at 339 (quoting Doctor's Assoc., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)).

However, "[b]efore a federal court may apply state-law principles to determine the validity of an arbitration agreement, it must [first] determine which state's laws to apply."  Pokorny v. Quixtar, Inc., 601 F.3d 987, 994 (9th Cir. 2010).  "This determination is made using the choice-of-law rules of the forum state . . . ."  Id.  Here, the forum state is California.

"Under California law, the choice-of-law rules differ depending on whether the parties have included a choice-of-law agreement in their contract . . . ."  Id. (citing Wash. Mut. Bank, FA v. Superior Court, 24 Cal. 4th 906 (2001)).  "When an agreement contains a choice of law provision, California courts apply the parties' choice of law unless the analytical approach articulated in § 187(2) of the Restatement (Second) of Conflict of Laws . . . dictates a different result."  Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d 996, 1002 (9th Cir. 2010) (citation omitted).

In this case, the Card Agreement includes a choice of law provision entitled "Governing Law." (Koehler Decl. Ex. D ¶ 22.)  It states:

> **Except as provided in the arbitration provision, this Agreement and your Account and any claim, dispute or controversy arising from or relating to this Agreement or your Account, whether based on contract, tort, fraud and other intentional torts, statute, common law and/or equity, are governed by and construed in accordance with federal law, and to the extent that state law applies, the laws of the State of Utah (without regard to internal principles of conflicts of law).  The legality, enforceability and interpretation of this Agreement . . . will be governed by such laws.  This Agreement is entered into between you and Us in Utah.  We make decisions about granting credit to you from, extend credit to you under the Agreement from, and accept your payments in Utah.**

(Id.)  Because the Card Agreement contains a Utah choice of law provision, the Court must apply Utah law to determine if a valid arbitration agreement exists, unless the Restatement analysis requires otherwise.[3]  See Bridge Fund Capital Corp., 622 F.3d at 1002.

According to the Restatement:

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either

   (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

   (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

---

[3] In its Reply, PRA contends that Plaintiff admitted that her claims should be arbitrated when she filed her own arbitration claim based on the Arbitration Provision, rendering her faulty choice of law arguments moot. (Reply at 2-3, 7; Simmonds Decl. Ex. A.)  The Court agrees that in filing an arbitration claim, Plaintiff appears to acknowledge the validity of the Arbitration Provision she contends is invalid as a matter of California law.  While this may be an alternative ground to order Plaintiff to arbitration, the Court notes that pursuant to Exhibit A of the declaration by Michael R. Simmonds, it appears that Plaintiff is only seeking to arbitrate her individual claims against PRA and requests monetary, not injunctive relief.  Therefore, issues regarding whether her class claims must be arbitrated would remain.  As a result, the Court does not reach PRA's contention that Plaintiff moots the issues before the Court.  Instead, the Court resolves all of the issues on their merits.

---

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2) (1988).  Utilizing the Restatement approach, the Court must first determine whether Utah has a substantial relationship to the parties or the debt associated with Plaintiff's CreditCare account, or there is any other reasonable basis for the application of Utah law.

Synchrony is a federally chartered savings association with its home office in Draper, Utah.  (Koehler Decl. ¶ 1.)  Utah is the place where Synchrony makes decisions about extending credit to individuals and where such credit is extended from; it is also the place where Synchrony accepts payments on its credit accounts.  (Id. Ex. D. ¶ 22.)  Most importantly, Utah is the place where the Card Agreement was entered into.  (Id.)

Based on these facts, the Court concludes that Utah had a substantial relationship to the parties and the transaction.  Moreover, even if the Court were to consider the nature of the relationship changed by the fact that Synchrony sold its rights in Plaintiff's account to PRA in 2012, the fact that the transaction originated in Utah, and Plaintiff's account was maintained from Utah for approximately four years, counsel in favor of applying Utah law.

The Court next considers whether Utah law is contrary to a fundamental policy of California.  See RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2) (1988).  Specifically, the Court must determine whether California has a fundamental policy against enforcing an agreement that provides for individual, non-class arbitration of all disputes or claims of any kind arising from or relating to an individual's account, "including statutory and common law claims and claims for equitable relief."  (See Koehler Decl. Ex. D ¶ 22.)

Plaintiff essentially argues enforcement of the Arbitration Provision here would contravene California public policy in favor of preserving an individual's right to seek the statutory remedy of public injunctive relief under the California Business and Professions Code.[4]  (Opp'n at 5-7.)  Relying on the recent holding in McGill v. Citibank, N.A., 2 Cal 5th 945 (2017), Plaintiff contends that California has a public policy against enforcement of an agreement that waives the availability of public injunctive relief in every forum.  Id.  Thus, because Plaintiff seeks public injunctive relief and the Card Agreement and Arbitration Provision waives this remedy, enforcement of the Arbitration provision would violate California policy.  (Id. at 5-9.)

_____

[4] In her Opposition, Plaintiff incorrectly argues that California law applies to the interpretation of the Card Agreement pursuant to the three-step government interest analysis.  (Opp'n at 4.)  The governmental interest analysis is "used by California courts when there is no controlling choice-of-law agreement."  Pokorny, 601 F.3d at 994.  As PRA notes, the Card Agreement, as well as the Arbitration Provision, clearly includes a choice of law provision that states Utah law governs.  Therefore, application of the governmental interest analysis is unwarranted.

However, the Court interprets Plaintiff's arguments concerning the holding of McGill v. Citibank, N.A., 2 Cal. 5th 945 (2017) to state that enforcement of the Arbitration Provision would violate a California policy whereby any contract that waives the availability of the remedy of public injunctive relief is deemed illegal.

PRA disputes that Plaintiff's present claims seek public injunctive relief.  (Mot. at 10-11; Reply at 5-6.)  PRA asserts that McGill determined that "[r]elief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief."  McGill, 2 Cal. 5th at 955.  Therefore, because Plaintiff brings a class action complaint on behalf of herself and other similarly situated individuals, the relief she seeks falls outside the definition of public injunctive relief set forth in McGill.  (Mot. at 5; Reply at 5.)

Based on a review of the FAC, the Court concludes that the relief Plaintiff seeks does not constitute public injunctive relief.  While Plaintiff crafts her allegations and prayer for relief in a manner that appears to constitute public injunctive relief, a closer inspection reveals that the relief she seeks is intended to redress and prevent further injury to a group of plaintiffs who have already been injured by PRA's allegedly unlawful debt collection practices.  Indeed, the classes which Plaintiff seeks to represent are not comprised of the general public; instead, the classes are comprised of persons who were subjected to purportedly unlawful debt collection efforts on the part of PRA in the last year.  (FAC ¶¶ 14.a-c.)  As a result, the Court finds that the relief Plaintiff seeks is not designed to prevent future harm to the public at large, but is rather intended to redress prior and future injury to a specific group of putative plaintiffs who have a debt defaulted on and subsequently purchased by PRA.  See McGill, 2 Cal. 5th at 955 (discussing the decision in Broughton v. Cigna Healthplans of Cal., 21 Cal. 4th 1066 (1999) and Cruz v. PacifiCare Health Sys., Inc., 30 Cal. 4th 303 (2003)).

Because the Court finds that Plaintiff does not seek public injunctive relief, there is no basis to conclude that enforcement of the Card Agreement would contravene fundamental California policy.  Having answered the two inquiries required under the Restatement approach in the negative, the Court concludes that the Restatement approach does not require application of California law.  Accordingly, Utah law governs the Court's analysis of whether the Arbitration Provision is valid and enforceable.

The Utah Statute Frauds provides that an unsigned credit agreement is binding and enforceable against the party charged upon all of the following:

(i) the debtor is provided with a written copy of the terms of the agreement;

(ii) the agreement provides that any use of the credit offered shall constitute acceptance of those terms; and

(iii) after the debtor receives the agreement, the debtor, or a person authorized by the debtor, requests funds pursuant to the credit agreement or otherwise uses the credit offered.

Utah Code Ann. § 25-5-4(2)(e).  PRA provides evidence—which Plaintiff does not dispute—that she received a written copy of the Card Agreement at her address in Chino Hills, California, that the Credit Agreement provided that any use of the account would constitute acceptance of the terms and conditions contained in the Credit Agreement, and that she used her account for

purchases totaling $3,700 between 2008 and 2010.  Further, Plaintiff does not contest the validity of the debt, nor does she deny that she failed to exercise her right to reject the Arbitration Provision.  Because Plaintiff's use of her account constituted acceptance of the Credit Agreement, the Arbitration Provision is valid and enforceable.[5]

**C.  Whether the Arbitration Provision Encompasses the Dispute at Issue**

"Arbitration should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  United Steelworkers, 363 U.S. at 589 (internal quotation marks omitted).  If a movant successfully demonstrates the existence of a valid arbitration agreement, a court must compel arbitration as long as the movant also demonstrates that the arbitration agreement encompasses the dispute at issue in the litigation.  See Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1119 (9th Cir. 2008).

Here, Plaintiff brings two claims for violations of the Rosenthal Fair Debt Collection Practices Act and § 17200 of the California Business and Professions Code.  (FAC at 1.)  The issue then is whether Plaintiff's statutory claims fall within the scope of the Arbitration Provision.

The Arbitration Provision states:

**ANY PAST PRESENT OR FUTURE LEGAL DISPUTUE OR CLAIM OF ANY KIND, INCLUDING STATUTORY AND COMMON LAW CLAIMS AND CLAIMS FOR EQUITABLE RELIEF, THAT RELATES IN ANY WAY TO YOUR ACCOUNT, CARD OR YOUR RELATIONSHIP WITH US ("CLAIM") WILL BE RESOLVED BY BINDING ARBITRATION IF EITHER YOU OR WE ELECT TO ARBITRATE.**

(Koehler Decl. Ex. D ¶ 21.)  Pursuant to the plain language of the Arbitration Provision, any dispute relating to Plaintiff's account is to be resolved through arbitration, including any statutory claims.  (Id.)  Plaintiff's asserted causes of action constitute statutory claims, arise from her account and the use of the credit extended by Synchrony to her.  While Plaintiff's claims are against PRA, PRA stands in the shoes of Synchrony.  Synchrony assigned its interest in the debt owed on Plaintiff's account to PRA in 2012 when PRA purchased that debt from Synchrony.  (See id. Ex. G.)  The Arbitration Provision clearly states that the Card Agreement extends to Synchrony's successors and assigns.  (Id. Ex. D. ¶ 22.)  Therefore, Plaintiff's claims against PRA are encompassed by the Arbitration Provision.

---

[5] Moreover, Utah law permits the use of class action waivers in consumer credit agreements.  Utah Code Ann. § 70C-4-105 ("[A] creditor may contract with the debtor of an open-end consumer credit contract for a waiver by the debtor of the right to initiate or participate in a class action related to the open-end consumer credit contract.")  Therefore, any potential class waiver issues that could arise under California law are irrelevant here.

Because PRA has successfully demonstrated that a valid arbitration agreement exists encompasses the instant dispute, the Court finds arbitration is appropriate.  The Court thus GRANTS the Motion and orders this matter to arbitration.

The final issue before the Court is PRA's request to stay this proceeding pending the outcome the arbitration proceedings.  (Mot. at 8-9.)  Pursuant to the FAA, the district court is required to stay the proceedings upon a showing that arbitration is warranted and a request by one of the parties.  9 U.S.C. § 3; see also Concepcion, 563 U.S. at 344 (requiring "courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement'" pursuant to Section 3 of the FAA).  In light of its decision to compel Plaintiff to arbitrate her claims, along with PRA's request to stay these proceedings, the Court STAYS this matter pending arbitration of Plaintiff's claims.

## IV.   CONCLUSION

For the foregoing reasons, PRA's Motion to Compel Arbitration is GRANTED and Plaintiff is ORDERED to pursue her claims in arbitration.  All proceedings in this matter are hereby STAYED and the parties are ORDERED to submit a joint status report within fourteen days of the conclusion of the arbitration proceedings.

**IT IS SO ORDERED.**